ORDERED.

**Dated:  December 07, 2021**

Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                              Case No. 8:20-bk-04273-MGW
                                                                       Chapter 11
Defoor Centre, LLC,

     Debtor.

_____/

### MEMORANDUM OPINION ON
### POST-CONFIRMATION RULE 2004 DISCOVERY

After confirming its chapter 11 plan, the Debtor sought Rule 2004 discovery
from Newtek Business Lending. The Debtor wanted to use the Rule 2004 discovery
to investigate potential causes of action against Newtek that would fund a
distribution to the Debtor's equity holders. The potential causes of action were listed
in the Debtor's schedules; described in some detail in the Debtor's case management
summary; and provided for in the Debtor's confirmed plan. Newtek objected to the
Rule 2004 discovery because, in its view, the causes of action the Debtor sought to
investigate were outside this Court's limited post-confirmation "related-to"
jurisdiction.

When considering whether to allow post-confirmation Rule 2004 discovery, bankruptcy courts should take into consideration their limited "related-to" post-confirmation jurisdiction: if the matter being investigated under Rule 2004 is one that lies outside the bankruptcy court's jurisdiction, then no cause exists for the Rule 2004 discovery. But here, the Court cannot tell whether the Debtor's potential causes of action lie outside this Court's jurisdiction because those causes of action haven't been filed yet.

Even so, the Court will deny the Debtor's request for Rule 2004 discovery. A Rule 2004 examination is meant to provide the Debtor with the preliminary information needed to file a complaint. Here, the Debtor already has that information. To allow the Debtor to use Rule 2004 when it already has the preliminary information needed to file its potential causes of action would give the Debtor an undue strategic advantage in what amounts to private litigation.

## I.    Background.[1]

The Debtor used to own an event center in Atlanta, Georgia, known as the Defoor Center.[2] Prepetition, the Debtor contracted to sell the Defoor Center to GB

---

[1] The background for this Memorandum Opinion largely comes from the Debtor's motion to compel Rule 2004 discovery (Doc. No. 120), case management summary (Doc. No. 8), and Subchapter V plan (Doc. No. 54), as well as argument by Debtor's counsel at the August 17, 2021 hearing on the Debtor's motion to compel Rule 2004 discovery. The Court assumes Newtek disputes the Debtor's allegations of wrongdoing. In setting forth the background of this dispute, the Court is not making any findings regarding Newtek's alleged wrongdoing.

[2] Doc. No. 8, ¶¶ 2 & 7.

Square, LLC.[3] According to the Debtor, Newtek Business Lending, an approved SBA lender, agreed to fund the purchase.[4]

As the Debtor tells the story, Newtek agreed to close the loan by April 15, 2020. Then, as the Debtor and GB Square neared the closing date, Newtek asked to extend the closing to May 7, 2020.[5] But, on May 6, 2020, Newtek's president apparently advised the Debtor and GB Square that, even though the loan had been fully approved by Newtek and the SBA, Newtek was pausing all lending until further notice.[6]

In the meantime, the Debtor's mortgage lender had sued to foreclose its mortgage on the Defoor Center.[7] The Debtor had managed to (literally and figuratively) buy more time from its lender so that it could close the sale with GB Square.[8] But the lender ultimately gave the Debtor a drop-dead date of May 21, 2020—just two weeks after Newtek advised GB Square it was pausing all lending

---

[3] *Id.* at ¶ 10.

[4] *Id.* at ¶ 12.

[5] *Id.* at ¶¶ 13 & 14.

[6] *Id.* at ¶¶ 15 – 17.

[7] *Id.* at ¶ 23.

[8] *Id.* at ¶¶ 23 & 24.

until further notice.[9] With no funding from Newtek in place to close the sale, the Debtor filed for chapter 11 bankruptcy.[10]

The same day it filed this case, the Debtor filed a motion seeking approval of the sale of the Defoor Center to GB Square.[11] In its sale motion, the Debtor indicated that GB Square had been in constant contact with Newtek and that Newtek had assured GB Square that financing for the sale would be forthcoming.[12] Although the Court approved the sale motion, Newtek did not provide the funding. Instead, to close the sale, GB Square had to obtain alternate financing,[13] which was more expensive than GB Square anticipated.

Both the Debtor and GB Square believe they have causes of action against Newtek based on Newtek's alleged failure to fund the loan. GB Square assigned whatever causes of action it may have against Newtek, if any, to the Debtor. Under the Debtor's Subchapter V plan, the proceeds from any litigation against Newtek would be used to fund the distribution to Class 4 equity claims.[14] The Debtor's plan

---

[9] *Id.* ¶¶ 16, 23 & 24.

[10] *Id.* at ¶ 24.

[11] Doc. No. 3.

[12] *Id.* at ¶ 3.

[13] Doc. No. 40-1.

[14] Doc. No. 54, Art. 6. Other creditors were to be paid from the proceeds from the sale of the Defoor Center. *Id.*

specifically provided that the Court retained jurisdiction over any potential claims against Newtek.[15]

    After the Debtor confirmed its plan, it served a Rule 2004 subpoena on Newtek.[16] Rule 2004, of course, permits a debtor-in-possession to examine non-debtors regarding (among other things) the debtor's property, financial condition, and matters affecting the administration of the debtor's estate. The Rule 2004 subpoena demanded that Newtek produce fourteen categories of documents, including all communications with the Debtor, GB Square, and the SBA; all documents relating to any transactions with GB Square; all wire transfers, canceled checks, or other documents relating to any loans to GB Square; all internal documents on how Newtek advises customers about Paycheck Protection Program (PPP) loans; and all internal documents on how Newtek processes, approves, and funds PPP loans.[17]

    When Newtek failed to produce documents responsive to the subpoena, the Debtor moved to compel production.[18] Newtek has objected. Newtek primarily argues that this Court's "related-to" jurisdiction is limited post-confirmation to

---

[15] Doc. No. 54, § 13.2.3. The plan reserves jurisdiction to determine all "Causes of Action." *Id.* "Causes of Action" is expressly defined to include any claims against Newtek. *Id.* at § 1.2.15 ("The Causes of Action include but are not limited to those against Newtek Business Lending and/or the U.S. Small Business Administration.").

[16] Doc. No. 119.

[17] *Id.*

[18] Doc. No. 120.

matters having a "close nexus" to—i.e., matters relating to the interpretation, consummation, execution, or administration of—the Debtor's Subchapter V plan or this bankruptcy case.[19] Because, in Newtek's view, the Debtor has failed to demonstrate how the claims it seeks to investigate have a close nexus to the Debtor's plan or this bankruptcy case, Newtek says the Court should not compel Rule 2004 discovery.[20]

## II.    Conclusions of Law.

More than thirty years ago, in *In re Cinderella Clothing Industries, Inc.*, the court considered its authority to order a Rule 2004 examination post-confirmation.[21] There, a group of creditors compromised their administrative claims so the debtor could confirm a plan.[22] The plan provided for the sale of the debtor's assets to an entity called Since 1914, Inc., which was wholly owned by Jolene, Inc.[23] After confirmation, the creditors discovered that Jolene, Inc. allegedly transferred its interest in Since 1914, Inc. to a group of individuals headed by the debtor's

---

[19] Doc. No. 131, ¶ 8 (citing *Jeffrey L. Miller Invs., Inc. v. Premier Realty Advisors, LLC (In re Jeffrey L. Miller Invs., Inc.)*, 624 B.R. 913 (Bankr. M.D. Fla. 2021)).

[20] *Id.* at ¶¶ 8 – 13.

[21] 93 B.R. 373, 376 – 78 (Bankr. E.D. Pa. 1988) ("The first issue concerns the power of a bankruptcy court to order Rule 2004 examinations of the debtor's principals and non-debtor parties post-confirmation.")

[22] *Id.* at 374 – 75.

[23] *Id.* at 374 – 75.

president.[24] Because the creditors would not have compromised their administrative claims (or voted for confirmation) had they known the debtor's assets were being sold to a group headed by the debtor's president, they sought to examine various individuals under Rule 2004 in an effort to have the case dismissed or converted (or to have the plan modified).[25]

In deciding whether it had the power to order the Rule 2004 examinations, the court explained that the decision to allow a Rule 2004 examination after confirmation must be considered in the context of a bankruptcy court's limited post-confirmation jurisdiction.[26] Thus, while the broad language of Rule 2004 plainly permits use of Rule 2004 post-confirmation, the court reasoned that a Rule 2004 examination "must be limited to issues which the court, at that time, still has the power to entertain."[27]

Those issues, in the court's view, were "restricted to the administration of the case post-confirmation."[28] The critical issue, then, was whether the proposed Rule 2004 examinations would produce "any information germane to the administration of the case," such as a motion to dismiss or convert the case, a motion to modify the

---

[24] *Id.*

[25] *Id.* at 378.

[26] *Id.* at 377.

[27] *Id.*

[28] *Id.*

plan, or a motion seeking to revoke the confirmation order.[29] The court concluded that, by and large, they would not.

While the facts the creditors sought to discover—i.e., that the debtor failed to adequately disclose the nature of the asset purchase agreement before confirmation—could have been grounds for revoking the confirmation order, the creditors missed the 180-deadline for seeking revocation.[30] What's more, the creditors could not use the Rule 2004 discovery to seek modification of the plan because they lacked standing to do so.[31]

The creditors did, however, have the right to compel compliance with the plan (or have the case dismissed or converted) based on Since 1914, Inc.'s failure to make payments under the asset purchase agreement and, in turn, the debtor's failure to make its plan payments.[32] But the Rule 2004 examinations did not seek discovery regarding whether payments had been made under the asset purchase agreement or the plan.[33] In fact, the debtor conceded the payments had not been made. So the court declined to permit the Rule 2004 examinations as proposed, though it did allow the creditors to conduct limited Rule 2004 examinations regarding

---

[29] *Id.* at 377 – 78.

[30] *Id.* at 375, 378.

[31] *Id.* at 378.

[32] *Id.* at 379.

[33] *Id.*

enforcement of the asset purchase agreement and the debtor's ability to comply with the confirmed plan.[34]

More recently, the court in *Millennium Lab Holdings II, LLC* took a different approach to post-confirmation Rule 2004 discovery.[35] In that case, the debtor's confirmed plan established two trusts: a "Corporate Trust" and a "Lender Trust."[36] The "Corporate Trust" held the debtor's retained causes of action, while the "Lender Trust" held causes of action contributed by certain lenders.[37] The trustee of the two trusts was responsible for investigating potential claims against third parties relating to the debtor's financial collapse.[38] As part of his investigation, the trustee sought to examine the third parties under Rule 2004.[39] The third parties objected to the Rule 2004 discovery, arguing the court lacked subject-matter jurisdiction to order Rule 2004 examinations.[40]

The court overruled the third parties' subject-matter jurisdiction objection. Although the court acknowledged that its post-confirmation "related-to" jurisdiction

---

[34] *Id.*

[35] 562 B.R. 614 (Bankr. D. Del. 2016).

[36] *Id.* at 619.

[37] *Id.*

[38] *Id.*

[39] *Id.* at 619 – 620.

[40] *Id.* at 620.

was limited to matters having a close nexus to the debtor's plan or bankruptcy case,[41] the court explained that Rule 2004 examinations fall within the court's "arising in title 11" jurisdiction, which is not limited post-confirmation.[42] That should have ended the court's inquiry.

The creditors, however, argued that the court should look through the Rule 2004 motion to the causes of action the trustee may bring based on the information learned during the Rule 2004 examinations.[43] According to the creditors, the causes of action the trustee hoped to discover lacked the requisite "close nexus" for "related to" jurisdiction. Therefore, the creditors argued, the court lacked subject-matter jurisdiction to order Rule 2004 discovery.

The court rejected that approach because there was no way to determine which causes of action the trustee may discover:

> [T]he Objectors argue that the Court, in conducting its post-confirmation jurisdictional analysis, should not look at the Rule 2004 Motion itself, but rather should look through the Motion to the underlying causes of actions that the Trustee may bring based on information gathered from his investigations. The Objectors contend that because the causes of action that will follow an investigation are non-core and do not have the requisite "close nexus" to the bankruptcy proceeding, the Court does not have jurisdiction to adjudicate this Rule 2004 Motion. *Such a contention endows the Court with prophetic powers it does not, and cannot, have. As numerous courts have recognized when presented with a Rule 2004 motion, "there is no*

---

[41] *Id.* at 621 – 22.

[42] *Id.* at 622 – 23.

[43] *Id.* at 623.

> *way to determine where the investigations will lead, what claims*
> *may be revealed, and what issues are core and non-core."*[44]

Having concluded it had jurisdiction to order Rule 2004 discovery, the court went on to consider whether the trustee established "good cause" for the requested Rule 2004 examinations.

As for the Rule 2004 examinations on the Corporate Trust's behalf, the trustee argued the facts as he knew them created a strong suspicion of wrongdoing but that the documents and information he had access to were not enough to determine the scope of the trustee's viable claims, which would benefit all claimants in Class 2 of the debtor's confirmed plan.[45] The court concluded that was sufficient to establish cause for a Rule 2004 examination on the Corporate Trust's behalf.[46]

The Rule 2004 examinations on the Lender Trust's behalf, though, were a different story. Although that trust was established under the plan, it consisted of claims belonging to certain lenders—not the debtor. And only those lenders—not all Class 2 claimants—would benefit from any recovery. So the court viewed the Rule 2004 examination on the Lender Trust's behalf as an impermissible attempt to gain a strategic advantage in what amounted to private litigation:

> In this case, the Trustee is entitled to Rule 2004 examinations on
> behalf of the Corporate Trust, as such an examination is a
> "legitimate post-confirmation inquiry" to ascertain potential
> causes of action, which success would benefit the Debtors'

---

[44] *Id.* (emphasis added) (citations omitted).

[45] *Id.* at 627 – 28.

[46] *Id.*

11

creditor body. Any request for information regarding potential
causes of action belonging to the Lenders' Trust, however, is
denied, as Rule 2004 was not intended to provide private litigants
[i.e. the Consenting Lenders] with "a strategic advantage in
fishing for potential private litigation." The fact that the Lender
Trust was created by the Plan does not infuse the Lender Trust
with bankruptcy tools that would not otherwise be available to
third party creditors pursuing claims against non-debtor entities.[47]

At first glance, the approaches taken by the *Cinderella Clothing* and *Millennium*
*Lab Holdings* courts appear at odds. In fact, the *Millennium Lab Holdings* court noted
that it disagreed with the *Cinderella Clothing* court with respect to part of its analysis.[48]
But this Court believes that *Cinderella Clothing* and *Millennium Lab Holdings* can be
read together and that three principles can be gleaned from doing so.

First, bankruptcy courts have jurisdiction over Rule 2004 motions post-
confirmation because Rule 2004 discovery "arises in" a case under title 11. And
"arising-in" jurisdiction—unlike "related-to" jurisdiction—is not restricted post-
confirmation. Second, when considering whether "good cause" exists for post-
confirmation Rule 2004 discovery, bankruptcy courts should take into consideration
their limited "related-to" post-confirmation jurisdiction: if the matter that is being
investigated under Rule 2004 is one that lies outside the bankruptcy court's
jurisdiction, then no cause exists for the Rule 2004 discovery; but the mere fact that
Rule 2004 discovery *may* reveal claims that lie outside the court's jurisdiction does

---

[47] *Id.* at 629.

[48] *Id.* at 624.

not, by itself, preclude Rule 2004 discovery. Third, Rule 2004 discovery should not be permitted when it is being used to gain an advantage in private litigation.

How do those principles apply here? For starters, this Court has jurisdiction to order Rule 2004 discovery post-confirmation. In considering whether to do so, the Court is not convinced, at this point, that the claims the Debtor seeks to investigate lie, as Newtek argues, outside this Court's limited post-confirmation related-to jurisdiction.

To be sure, the Court is sympathetic to Newtek's argument. After all, eight months ago, in *In re Jeffrey L. Miller Investments, Inc.*, this Court dismissed an adversary proceeding for lack of subject-matter jurisdiction on facts similar to those here.[49]

In *Jeffrey L. Miller Investments*, the debtor sued Premier Realty Advisors (and its principals) for allegedly fraudulently inducing the debtor to enter into a real estate sales contract. The debtor filed its adversary complaint two months after confirming its chapter 11 plan. By the time the debtor had filed its complaint, its plan had been fully consummated: the debtor's real property (its primary asset) had been sold at an auction; all the debtor's allowed claims had been paid in full from the sales proceeds; and the surplus sales proceeds had been distributed to the Debtor's principal.[50]

---

[49] *Jeffrey L. Miller Invs., Inc. v. Premier Realty Advisors, LLC (In re Jeffrey L. Miller Invs., Inc.)*, 624 B.R. 913, 916 – 917 (Bankr. M.D. Fla. 2021).

[50] *Id.* Indeed, all that had happened *before* the debtor in that case had confirmed its plan.

In ruling on a motion to dismiss, this Court noted that its post-confirmation "related-to" jurisdiction was limited to matters having a close nexus to the chapter 11 plan or the bankruptcy case—i.e., matters affecting the interpretation, consummation, execution, or administration of the confirmed plan.[51] Because the debtor's plan had already been fully consummated, and any recovery was only for the benefit of the debtor's principal, this Court concluded there was no close nexus to the chapter 11 plan or the bankruptcy case; therefore, the Court concluded it lacked subject-matter jurisdiction over the debtor's claims.[52]

Here, like in *Jeffrey L. Miller Investments*, the Debtor's primary asset was real property;[53] the property was sold before confirmation;[54] the sales proceeds were sufficient to pay allowed claims (other than claims of equity holders);[55] the plan was substantially consummated before the Debtor began pursuing its post-confirmation claims;[56] and the main (if not sole) beneficiaries of the post-confirmation claims were equity holders.[57] But there are two key differences between this case and *Jeffrey L. Miller Investments*.

---

[51] *Id.*

[52] *Id.* at 920.

[53] Doc. No. 1.

[54] Doc. No. 1; Doc. No. 43.

[55] Doc. No. 73, ¶ 10.

[56] Doc. No. 103.

[57] Doc. No. 54, Art. 6.

First, unlike in *Jeffrey L. Miller Investments*, the plan in this case specifically referenced the potential causes of action against Newtek.[58] At least one court has suggested that the requisite "close nexus" may exist if the plan specifically enumerated a cause of action over which the bankruptcy court had jurisdiction.[59] Second, and more important, the procedural posture in *Jeffrey L. Miller Investments* was different: there, unlike here, the debtor had alleged its post-confirmation claims in a complaint, which allowed the Court to determine whether there was a close nexus to the debtor's plan or bankruptcy case.

Like the *Millennium Lab Holdings* court, this Court is not endowed with prophetic powers that allow it to pre-judge subject-matter jurisdiction over yet-to-be-filed causes of action. At this stage, the Court cannot definitively say that the causes of action the Debtor is pursuing lie outside this Court's subject-matter jurisdiction. So lack of subject-matter jurisdiction is not grounds for denying Rule 2004 discovery. Even so, the Court will deny Rule 2004 discovery for another reason.

For the Court to grant Rule 2004 discovery, it must make a finding of "good cause."[60] As the party seeking discovery under Rule 2004, the Debtor bears the

---

[58] Doc. No. 54, § 1.2.15.

[59] *BWI Liquidating Corp. v. City of Rialto (In re BWI Liquidating Corp.)*, 437 B.R. 160, 165 (Bankr. D. Del. 2010) ("A 'close nexus' may be found where the plan specifically enumerates the cause of action.").

[60] *In re Gaime*, 2018 WL 7199806, at *2 (Bankr. M.D. Fla. Dec. 18, 2018) ("In granting a request for Rule 2004 examination, the court must make a finding of 'good cause.'").

15

burden of proving that "good cause" exists for the discovery it seeks.[61] The Debtor

can prove good cause by showing that either the Rule 2004 discovery is needed to

establish a claim or that denial of the Rule 2004 discovery would cause undue

hardship or injustice.[62] The Debtor has failed to make that showing here.

For starters, the Debtor is not a newcomer to the scene.[63] Rather, the Debtor

was one party to the transaction that gives rise to the alleged claims against

Newtek.[64] The Debtor was able to identify the potential cause of action against

Newtek on its schedules;[65] it articulated the facts giving rise to its potential claims

---

[61] *Id.*; *see also In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) ("Although a Rule 2004 examination may be ordered *ex parte*, once a motion to quash a subpoena is made, the examiner bears the burden of proving that good cause exists for taking the requested discovery."); *In re Serignese*, 2019 WL 2366424, at *2 (Bankr. S.D.N.Y. June 3, 2019) ("The Movants bear the burden of showing good cause for the [Rule 2004] examination they are seeking.").

[62] *In re Gaime*, 2018 WL 7199806, at *2 ("This burden can be satisfied by demonstrating either that the Rule 2004 discovery is needed to establish a claim, or that the denial of the discovery would cause undue hardship or injustice.").

[63] *In Good Hope Refineries, Inc.*, 9 B.R. 421, 422 (Bankr. D. Mass. 1981) (explaining that an examination under then Bankruptcy Rule 205(a), a precursor to Rule 2004, was "intended to give the Trustee, a newcomer into the Debtor's affairs, all available information as to the Debtor's commercial existence"); *Schlossberg v. Madeoy (In re Madeoy)*, 2015 WL 4879960, at *7 (Bankr. D. Md. July 30, 2015) (explaining that as a newcomer to the debtor's transactions, "the investigative tools provided to the Trustee [under Rule 2004] are crucial to enable him, as for all trustees, to obtain an understanding of the assets and transactions of the estate and to determine whether factual support exists to bring claims").

[64] Doc. No. 8, ¶¶ 10 – 23. The Debtor also took assignment of whatever potential claims may belong to GB Square, the other party to the transaction.

[65] Doc. No. 1, Schedule A/B.

(whether direct or by way of assignment) in its Case Management Summary;[66] and it included the potential causes of action in its plan.[67]

Given that, it is apparent the Debtor has the preliminary information needed to bring whatever claims it may have against Newtek. That preliminary information is all Rule 2004 is intended to provide:

> Rule 2004 examinations are meant to obtain preliminary information. Parties then use that information to file adversary proceedings and get more details in the discovery process.[68]

Because the Debtor will have ample opportunity to conduct discovery once it files an adversary complaint, it will not suffer a hardship or be prejudiced by the denial of Rule 2004 discovery.

To the contrary, allowing the Debtor to conduct Rule 2004 discovery would give the Debtor an unfair strategic advantage. Unlike Rule 26 of the Federal Rules of Civil Procedure, which generally prohibits "fishing expeditions,"[69] Rule 2004 "is

---

[66] Doc. No. 8, ¶¶ 10 – 23.

[67] Doc. No. 54, § 1.2.15.

[68] *In re Scherer*, 2019 WL 10733909, at *1 (Bankr. M.D. Fla. Feb. 7, 2019).

[69] *In re The Charles F. Hamblen Post 37 Am. Legion Dep't of Fla., Inc.*, 2019 WL 10733641, at *2 (Bankr. M.D. Fla. June 26, 2019) ("Although the scope of discovery is broad, 'the discovery rules do not permit the [parties] to go on a fishing expedition.'"); *Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 496 B.R. 713, 724 (Bankr. S.D.N.Y. 2013) (explaining that "many courts have 'routinely decline[d] to authorize fishing expeditions'").

17

often described as being in the nature of a fishing expedition."[70] Had the Debtor already filed its alleged claims against Newtek, the "pending proceeding" rule would bar the Debtor from circumventing the Federal Rules' prohibition on "fishing expeditions."[71]

Although the Debtor has not yet filed an adversary proceeding, it has the preliminary information to do so. The Debtor should not be allowed to delay the filing of an adversary proceeding so that it can avoid the "pending proceeding" rule and gain a tactical advantage by "going fishing" under Rule 2004, thereby discovering information it could not in the adversary proceeding.

This is particularly true here because the Debtor's claims are tantamount to private litigation: the Debtor is pursuing a claim it took assignment of from a non-debtor (along with whatever direct claims it may have) against a stranger to the bankruptcy proceeding for the benefit of equity. Indeed, the Rule 2004 discovery here is very much like the Rule 2004 discovery that the *Millennium Lab Holdings* court prohibited.

Recall, in *Millennium Lab Holdings*, the trustee under the debtor's confirmed plan sought to investigate claims held by the Lender Trust (which held claims

---

[70] *In re Vox II, LLC*, 2008 WL 596697, at *2 (Bankr. D. Md. Mar. 4, 2008) ("Discovery under Rule 2004 is far broader than discovery under the Federal Rules of Civil Procedure and is often described as being in the nature of a fishing expedition.").

[71] *In re Gaime*, 2018 WL 7199806, at *3 (Bankr. M.D. Fla. Dec. 18, 2018). "Under this [pending proceeding] rule, 'once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not Rule 2004.'" *Id.* (quoting *In re Glitnir banki hf.*, 2011 WL 3652764, at *4 (Bankr. S.D.N.Y. Aug. 19, 2011)).

18

belonging to some of the debtor's lenders). Even though the Lender Trust was created by the plan, the *Millennium Lab Holdings* court concluded that the discovery sought did not fall within Rule 2004 because "Rule 2004 was not intended to provide private litigants [i.e. the Consenting Lenders] with 'a strategic advantage in fishing for potential private litigation.'"[72]

## III.    Conclusion

More than thirty years ago, in discussing the scope of Bankruptcy Rule 205, which is the precursor to Rule 2004, the bankruptcy court in *In re Good Hope Refineries, Inc.* explained that discovery under Rule 205 (now Rule 2004) was not intended to provide a party a strategic advantage in private litigation:

> Rule 205 is intended to provide the Trustee, generally new to the case, with a very broad discovery device to aid in an efficient and expeditious ingathering of all of the pertinent facts necessary in the effective administration of the estates.
>
> *It is not intended to give the rehabilitated debtor post confirmation a strategic advantage in fishing for potential private litigation.* Our basic concept of fair play expressed in the constitutional legalese of equal protection and due process should require all litigants to use the same discovery and procedural rules when not directly engaged in those activities that call for the bankruptcy umbrella, namely, that collection of activities characterized as the administration of the estate.[73]

---

[72] 562 B.R. 614, 629 (Bankr. D. Del. 2016).

[73] *In Good Hope Refineries, Inc.*, 9 B.R. 421, 423 (Bankr. D. Mass. 1981) (emphasis added).

Because the Rule 2004 discovery here appears to be an attempt by the Debtor to

gain a strategic advantage in private litigation, as opposed to an attempt to discover

the preliminary information needed to file an adversary complaint against Newtek,

the Court will enter a separate order denying the Debtor's request for Rule 2004

discovery.

---

Attorney Mark F. Robens is directed to serve a copy of this Memorandum Opinion on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of the Opinion.

---

**Mark F. Robens, Esq.**
**Stichter, Riedel, Blain & Postler, P.A.**
  *Counsel for Newtek Business Lending, LLC*

**David S. Jennis, Esq.**
**Mary A. Joyner, Esq.**
  *Counsel for Debtor*